STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-1456

STATE OF LOUISIANA

VERSUS

ANTHONY DAYE

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 11-102
HONORABLE EDWARD M. LEONARD, JR., DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and John E. Conery, Judges.

Conery, J., dissents and assigns reasons.

REVERSED AND REMANDED.

J. Phillip Haney
District Attorney – 16th Judicial District
300 Iberia Street - Suite 200
New Iberia, LA 70560
Telephone: (337) 369-4420
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

Annette Fuller Roach
Louisiana Appellate Project
P. O. Box 1747
Lake Charles, LA 70602-1747
Telephone: (337) 436-2900
COUNSEL FOR:
    Defendant/Appellant - Anthony Daye

**Angela B. Odinet**
**Assistant District Attorney – 16th Judicial District**
**415 Main Street**
**St. Martinville, LA 70582**
**Telephone: (337) 394-2220**
**COUNSEL FOR:**
  **Plaintiff/Appellee - State of Louisiana**

**Anthony Daye**
**Louisiana State Penitentiary**
**Camp D - Raven 2L**
**Angola, LA 70712**
  **Defendant/Appellant**

**THIBODEAUX, Chief Judge.**

Defendant, Anthony Daye, was convicted of possession of marijuana, second offense. As a fifth-felony offender, he was subject to a sentencing range of twenty years to life. The trial court sentenced Defendant to life imprisonment. Defendant appeals, contending that the trial court erred by imposing an excessive sentence in violation of the Louisiana Constitution and by denying his Motion to Reconsider Sentence. As we agree that the sentence was excessive, we reverse the trial court's judgment and remand the case for resentencing.

I.

## ISSUES

We shall consider whether the trial court erred by:

(1)     imposing an excessive sentence in violation of La.Const. art. 1, § 20; and

(2)     denying Defendant's Motion to Reconsider Sentence.

II.

## FACTS AND PROCEDURAL HISTORY

On August 10, 2010, Deputies Ben LaSalle and Wade Bergeron were following a vehicle when they saw the Defendant jump out of the vehicle and start running. Deputy LaSalle saw that the Defendant was running with his right hand underneath his shirt "as if he was concealing something." Deputy Bergeron got out of the car and chased the Defendant as the Defendant ran through a garage. Deputy Bergeron saw the Defendant stop at a vehicle in the garage and appear to throw something underneath the vehicle. Deputy Bergeron stopped at the vehicle while Deputy LaSalle continued to chase the Defendant. The Defendant was apprehended by two other agents in the area and was quickly arrested by Deputy LaSalle. Pursuant to a search incident to

arrest, Deputy LaSalle found $1,551.00 in cash in the Defendant's pocket.

According to Deputy LaSalle, the Defendant told him he wanted to go to the narcotics office because he could give them information. Sergeant Jason Comeaux, one of the agents assisting at the scene, testified that the Defendant told them he wanted to talk to them about assisting in large-scale narcotics investigations.

Before transporting the Defendant to the narcotics office, Deputy LaSalle went to the garage where Deputy Bergeron was waiting. Deputy Bergeron notified Deputy LaSalle that he found a bag containing suspected marijuana and a hand rolled marijuana cigarette in the same area Deputy Bergeron saw the Defendant throw something. Once the evidence was seized, the Defendant was transported to the narcotics office. After advising the Defendant of his rights, Deputy LaSalle asked the Defendant why he exited the vehicle and ran. The Defendant replied, "I had some weed and didn't want to get caught with it. I knew ya'll were going to stop us." When Deputy LaSalle specifically asked the Defendant if the bag of marijuana and marijuana cigarette located in the carport were his, the Defendant answered, "Yes, that was for me." As for the money found on the Defendant, Deputy LaSalle asked the Defendant if he had a job. The Defendant responded, "No, I just make a little hustle." Deputy LaSalle testified that based on his knowledge and experience as a narcotics agent in Iberia Parish, the Defendant's statement meant that he sold drugs. Deputy LaSalle also testified that the $1,551.00 in cash found in the Defendant's pocket consisted of the following denominations: eleven one dollar bills; six five dollar bills; nineteen ten dollar bills; and sixty-six twenty dollar bills.

*State v. Daye*, 12-1469, p. 1 (La.App. 3 Cir. 6/5/13) (unpublished opinion).

A jury convicted Defendant of the following charges: guilty of the responsive verdict of possession of marijuana; guilty as charged of a transaction involving proceeds from drug offenses; and guilty as charged of possession of marijuana, second offense. A habitual offender hearing followed, where the trial court found Defendant to be a fifth-felony offender subject to a sentencing range of

twenty years to life under La.R.S. 15:529.1(A)(4)(a). Defendant's prior felony offenses included three felony convictions in 2006 for: (1) Introduction of Contraband into a Penal Institution, a violation of La.R.S. 14:402; (2) Attempted Possession of a Firearm by a Convicted Felon, violations of La.R.S. 14:27 and La.R.S. 14:95.1; and (3) Aggravated Second Degree Battery, a violation of 14:34.7. Defendant also had two convictions in 1998 for: (1) Possession with Intent to Distribute Cocaine, a violation of La.R.S. 40:967(A)(2); and (2) Distribution of Cocaine, a violation of La.R.S. 40:967(A)(1). At the sentencing hearing, the trial court sentenced Defendant to life imprisonment, giving the following reasons:

> The Court has reviewed the file concerning Mr. Daye and particularly finds that in this case that on July 27th of this year the Court heard a Habitual Offender Hearing and at that time found and ruled that the defendant is in fact a fifth felony offender and set this date as a sentencing hearing and a sentencing date. Having reviewed the evidence that was presented in the Habitual Offender proceeding as well as today's proceeding and finding that Mr. Daye has a long history of violating the law, involvement with drugs, involvement with illegal weapons, [and] involvement with violent acts the Court finds that the only appropriate sentence is that Mr. Daye be sentenced to serve the rest of his natural life in prison with the Department of Safety and Corrections. It's unfortunate that this happens. It's unfortunate that Mr. Daye has chosen to live his life in this way, but that was his choice and has been his choice for quite some time.

> The Court considers that any lesser sentence would deprecate the seriousness of the offense or offenses and will inform Mr. Daye that if he thinks anything has been done in violation of his rights that he has a right to file a Petition for Post-conviction Relief and if he wishes to do so he has two years from the date the judgment of the Court becomes final.

On initial appeal, this court determined that there was insufficient evidence to support a conviction for a transaction involving the proceeds from a drug offense. This court also vacated the responsive verdict of possession of marijuana on double jeopardy grounds because the same evidence was used to convict Defendant of both that charge and the second-offense possession. The life sentence was vacated as indeterminate, but the habitual offender adjudication was not set aside. *Daye*, 12-1469.

On remand, the trial court held a resentencing hearing for the Defendant and "reiterated all the comments that it made at the original sentencing" before again sentencing Defendant to life imprisonment. Defendant is now before this court, asserting two assignments of error: (1) that the sentence imposed was excessive, and (2) the trial court erred in denying his Motion to Reconsider Sentence.

III.

**STANDARD OF REVIEW**

The law is well-settled concerning the standard to be used in reviewing excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067.

4

> The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

## IV.

## <u>LAW AND DISCUSSION</u>

Defendant asserts that his life sentence was excessive and that the trial court erred in denying his Motion to Reconsider Sentence. More specifically, Defendant's asserts that the trial court did not give sufficient consideration to the facts of this case when fashioning an appropriate sentence. While Defendant acknowledges that his criminal history includes a conviction for aggravated second degree battery, he argues that the present conviction, possession of marijuana, second offense, does not warrant life imprisonment in light of the amount seized.[1] We agree.

A trial court's lack of sufficient reasons during sentencing is not reviewable as a separate issue if it is not raised in the trial court. *See State v. Semien*, 06-841 (La.App. 3 Cir. 1/31/07), 948 So.2d 1189, *writ denied*, 07-448 (10/12/07), 965 So.2d 397. Of course, the trial court's reasoning is subsumed as a sub-issue in the overall excessiveness analysis. *See State v. Rubin*, 04-1531 (La.App. 3 Cir. 4/6/05), 899 So.2d 180, *writ denied*, 05-1218 (La. 12/16/05), 917 So.2d 1106. Defendant's argument in his Motion to Reconsider Sentence was limited to a bare claim of excessiveness. Therefore, he is similarly limited on

---

[1]Defendant possessed forty-five grams gross weight. The technician testified that the "[g]ross weight means it's the material and it also includes the weight of the bag as well."

5

appeal.  La.Code Crim.P. art. 881.1(E).  *See State v. Jones*, 10-786 (La.App. 3 Cir. 4/27/11), 63 So.3d 330, *writ denied*, 11-1035 (La. 11/4/11), 75 So.3d 923.

It is well settled that even when a sentence falls within the statutory sentencing range, it still may be excessive.  *State v. Forshee*, 395 So.2d 742 (La.1981); *State v. Sepulvado*, 367 So.2d 762 (La.1979).  In determining whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has suggested that we consider the following factors:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes.  *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501.  While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed."  *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991).  Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."  *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

While Defendant is a fifth-felony offender for sentencing purposes, and the trial court had discretion to impose a sentence between twenty years and life imprisonment, imposition of the maximum penalty within the sentencing range is excessive and disproportionate given the specific facts of this case.  Defendant's remaining conviction, possession of marijuana, second offense, is a relatively minor felony and only carries a penalty of a fine "not less than two hundred fifty

dollars, nor more than two thousand dollars, [or imprisonment] with or without hard labor for not more than five years, or both." La.R.S. 40:966(E)(2)(a). Furthermore, most of Defendant's past crimes involved non-violent, drug-related offenses. While he was convicted of aggravated second degree battery when incarcerated as well as attempted possession of a firearm by a convicted felon, these isolated incidents do not indicate an extensive predisposition to violence, and the violent or non-violent nature of these past crimes alone cannot be the deciding factor in an excessive-sentence determination. *See State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672.

The imposition of a life sentence for such a small underlying crime also poses a much greater harm than good for society, as such a sentence will only fuel Louisiana's incarceration epidemic and lead to unnecessary economic and social burdens on inmates and taxpayers alike. *See State v. Jackson*, 11-923 (La.App. 3 Cir. 6/6/12), 92 So.3d 1243, *writ denied*, 12-1540 (La. 1/18/13), 107 So.3d 626 (Thibodeaux, J., dissenting). While sentence enhancement deters recidivist tendencies and encourages rehabilitation, these goals become tarnished when offenses deserving of a mere slap on the wrist are instead subjected to a "lock-em-up and throw away the key" philosophy. If the applicable enhancement statute provides a range of sentences for the trial court to consider, then the maximum sentence of life without parole should not be levied unless carefully articulated findings and reasons for sentencing clearly justify its imposition.

Furthermore, in comparing sentences for similar crimes, we note that there are no cases directly on point for reduction of a sentence within the sentencing range. However, cases involving reductions below sentencing ranges

7

for similarly-situated, multiple-felony offenders further indicate that Defendant's sentence should be reduced.

In *State v. Kennerson*, 96-1518, pp. 22-23 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1382, this court found that the combined effect of individual sentences were disproportionate in light of the crimes committed. This court remanded for sentencing, reasoning that:

> Despite the fact that the *individual* sentences appear to be legally sound, their *combined* effect is disproportionate to the crimes committed. The facts of the case indicate that: the crimes were simple burglaries; the burglars did not try to enter the victims' homes, and the burglars did not manifest a violent intent or act toward the victims. In addition, the value of the items taken from Mr. Bordelon's truck is unclear, while the burglars took a tire and $75 worth of frozen meat from Mr. Guillory's shed. Although the defendant is clearly a career thief and burglar, which we in no way intend to condone or minimize, he does not have a violent history. Thus, the record lacks evidence supporting the lower court's characterization of the defendant as a "dangerous man."

In *State v. Combs*, 02-1920 (La.App. 4 Cir. 5/21/03), 848 So.2d 672, the underlying conviction was for possession of cocaine, and the defendant was adjudicated a third-felony offender (the previous felonies were for possession of cocaine and forgery). He was subsequently sentenced to life imprisonment. The fourth circuit found the defendant's sentence was excessive, as the defendant was thirty-two years of age, had a supportive family who wanted to help him, was not in possession of a weapon when arrested, was only a petty street drug pusher, and was a non-violent offender. Based on these facts, the appellate court found the life sentence was excessive and remanded for resentencing.

Similarly, in *State v. Wilson*, 37,555 (La.App. 2 Cir. 11/6/03), 859 So.2d 957, *writ denied*, 03-3232 (La. 6/4/04), 876 So.2d 73, the second circuit found the facts presented a downward departure from a mandatory life sentence where the defendant was convicted of first degree robbery, adjudicated a fourth-felony offender, and sentenced to life imprisonment. The court reduced the Defendant's conviction to simple robbery, and he was resentenced to life imprisonment without benefits. On appeal, the second circuit concluded the defendant's prior convictions did not reach a level of culpability and gravity warranting a life sentence and stated:

> The supreme court in [*State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672] made clear that the fact that defendant's felonies are non-violent alone is not sufficient to override the legislatively designed sentences of the Habitual Offender Law. *Johnson*, 709 So.2d at 676. But, it did note that, "the classification of a defendant's instant or prior offenses as non-violent should not be discounted." *Id.* Three of defendant's four felonies were non-violent. Even his fourth felony, while classified as a violent offense, involved no actual violence. *Cf. State v. Hayes*, [97-1526 (La.App. 1 Cir. 6/25/99), 739 So.2d 301, *writ denied*, 99-2136 (La. 8/31/00), 764 So.2d 955]. There is also no evidence in the record that defendant ever possessed a dangerous weapon, and Ms. Cone, the victim, testified that she never felt threatened.

> Furthermore, this particular life imprisonment imposes an undue burden on the taxpayers of the state, who must feed, house, and clothe this defendant for life. *State v. Hayes*, 739 So.2d at 303. As defendant ages, these costs will only increase due to the need for geriatric health treatments.

> The defendant in this case obviously needs lengthy incarceration. We believe that a severe sentence in this case, for example, a sentence of not less than 20 years, in conformity with La. R.S. 15:529(A)(1)(c)(i), but not more 30 years at hard labor, would meet all of the societal goals of incarceration and be constitutional in this case.

9

For all the reasons above, and after a review of the facts and circumstances of this particular defendant and the instant crime, we find clear and convincing evidence that this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. A sentence of life imprisonment for this defendant, on this record, is "disproportionate" to the harm done and shocks "one's sense of justice." *State v. Lobato*, [603 So.2d 739 (La.1992)]. Thus, we are unable to conclude that this life sentence is not excessive under the constitutional standard.

*Id.* at 964-65 (footnote omitted).

Considering the specific facts of this case along with the related jurisprudence, we find that Defendant's life sentence is excessive and unconstitutional. While Defendant's history of criminal conduct with some violent crimes still necessitates a sentence within the sentencing range, we find that a sentence lower than the maximum would best serve the societal goal of deterring recidivism for this type of offender while not placing an undue burden on the Defendant or the State. As such, we reverse the trial court's imposition of a life sentence and remand this case for resentencing in accordance with this opinion.

V.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment and remand the case for resentencing.

**REVERSED AND REMANDED.**

STATE OF LOUISIANA

VERSUS

ANTHONY DAYE

**CONERY, J., dissenting.**

I agree that the life sentence imposed on this defendant is unconstitutionally excessive based on the facts in the record before us. Under the habitual offender law, however, the seriousness of the underlying felony is but one factor to consider.

Here, an experienced prosecutor, for whatever reason on that particular day, did not provide a sufficient evidentiary basis to thoroughly and adequately support or justify a life sentence without parole. In addition, an even more experienced and capable trial judge did not articulate and explain on the record at resentencing that he considered and applied all the sentencing guidelines set out in La.Code Crim.P. art. 894.1. Nor did he fully explain clearly why he chose to impose the maximum sentence instead of a lesser sentence within the twenty year to life sentencing range.

Where, as in this case, the underlying felony is relatively minor, it is especially important that the evidence presented must be thorough and complete and the trial judge's reasons clear as to why the sentence imposed is appropriate for the particular defendant. On its face, a life sentence without parole, even though imposed pursuant to the habitual offender law for this fifth felony offender,

is harsh and unconstitutionally excessive, especially considering that this defendant's underlying conviction was for possessing a little over an ounce of marijuana as a second marijuana offender. I concur that the sentence must be reversed and the case remanded for resentencing.

I disagree with the majority's directive that on remand the trial judge *must* impose a sentence "lower than the maximum." The trial judge should have the discretion to impose a sentence within the sentencing range provided for by the legislature, twenty years to life without parole pursuant to La.R.S. 15:529.1(A)(4)(a) based on the evidence presented at resentencing.

Because one of the factors in this case is the relatively minor nature of the crime of possession of marijuana second, in order to withstand constitutional scrutiny, the sentence imposed on remand must be based on evidence that more completely and convincingly demonstrates why this defendant, for comprehensive and clearly articulated reasons, deserves the sentence the trial judge in his discretion may finally impose under the habitual offender law. On remand, the prosecutor, if he chooses to do so, should be given every opportunity to put on legally admissible and relevant evidence of the dangerousness of the defendant, including unadjudicated criminal charges and conduct, the aggravating circumstances of this crime, as well as factual evidence of all the underlying felony convictions upon which the habitual offender charge was based. On remand, the defendant should also be given every opportunity to put on mitigating evidence. The trial judge's decision, as required by law, but especially in a case such as this, should be based on factual findings after a review of all the sentencing factors listed under La.Code Crim.P. art. 894.1, and should include clearly articulated reasons for the sentence eventually imposed within the legislatively approved

2

sentencing range.  *See State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672; *State v. Todd,* 03-1040, (La.App. 3 Cir. 2/4/04), 866 So.2d 1040, *writ denied,* 04-588 (La. 7/2/04), 877 So.2d 143.

Under La.Code Crim.P. art. 894.1(B)(7), lack of prior criminal history can be considered as a mitigating factor.  As a corollary, in *State v. Brown,* 410 So.2d 1043 (La.1982), the supreme court held that evidence of unadjudicated criminal conduct can be admissible at sentencing.  In this case, the state argued at sentencing that the defendant had been indicted by the grand jury for second degree murder, a factor that could be extremely relevant in sentencing.  However, no evidence was introduced at sentencing on this issue and the trial judge said he did not consider that charge.  Though evidence of unadjudicated criminal conduct is admissible, in order to be useful and persuasive, a full factual basis for that conduct should be presented, and the trial judge should then closely evaluate and carefully examine the weight of the evidence on that issue.  *See Brown*, 410 So.2d 1043; *State v. J.S.*, 10-1233 (La.App. 3 Cir. 5/11/11), 63 So.3d 1185; *State v. Turner*, 12-688 (La.App. 3 Cir. 12/5/12), 103 So.3d 1258; *State v. Billingsley*, 13-11(La.App. 3 Cir. 10/9/13), 123 So.3d 336.

I would not impose limits on the trial judge's discretion at resentencing.  A life sentence may, indeed, be constitutionally permissible if based on legally admissible and sufficient evidence and clearly articulated findings and reasons.